IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOHN AARON VANDERBURG,
    Plaintiff,

vs.                                         Case No. 3:11cv501/MCR/CJK

ESCAMBIA CNTY., FLA., et al.,
    Defendants.

## REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se* and *in forma pauperis*, has filed an amended civil rights complaint pursuant to 42 U.S.C. § 1983. (Doc. 5). Upon review of the amended complaint, the court concludes that plaintiff has not presented an actionable claim, and that the complaint should be dismissed.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, John Aaron Vanderburg ("Vanderburg"), a *pro se* non-prisoner, initiated this lawsuit on October 18, 2011. (Doc. 1). In his amended complaint (doc. 5), filed December 5, 2011, plaintiff seeks compensatory and punitive damages based on his claims that defendants caused him to be falsely imprisoned pending trial on an allegation that he violated the terms of his probation. (Doc. 5, p. 4). Plaintiff names as defendants the state of Florida, Escambia County, Escambia County Sheriff David Morgan ("Sheriff Morgan"), County Judge Joyce H. Williams ("Judge Williams"), Assistant State Attorney Tiny Cox ("Cox"), and Charity Dublin ("Dublin"), a probation officer with the Escambia County Department of Probation. (Doc. 5, pp. 1-2). Plaintiff sues each defendant in his or her official and individual capacities.

The chronology of relevant events giving rise to this complaint begins on or around December 6, 2010, when Judge Williams sentenced plaintiff to twelve months' probation on convictions for reckless driving and driving without a valid driver's license. (Doc. 5, p. 3). Judge Williams ordered that upon a violation of his probation, plaintiff was not to be incarcerated; Assistant State Attorney Cox also stipulated that no imprisonment would follow a probation violation. (Doc. 5, p. 3). On April 25, 2011, Probation Officer Dublin filed an affidavit of violation of probation ("VOP"), alleging that plaintiff violated the terms of his probation. Dublin recommended that bond be denied. (Doc. 5, p. 3).

Accordingly, plaintiff was detained by the Escambia County Sheriff's Department between August 2, 2011, and September 15, 2011, a span of forty-five days. (Doc. 5, p. 3). Plaintiff filed a petition for writ of habeas corpus in the county court on September 6, 2011, and a hearing was set for three days later. (Doc. 5, p. 3). Judge Williams, however, cancelled the hearing. (Doc. 5, p. 3). Neither Cox nor Dublin approached the court to prevent or rectify what plaintiff now contends was his unlawful confinement. (Doc. 5, p. 3).

Based on the foregoing, plaintiff asserts claims against the named defendants for false imprisonment, in violation of the Fourth and Fourteenth Amendments to the Constitution. (Doc. 5, p. 4). Citing defendants' alleged "abusive use of authority," plaintiff seeks a trial, as well as compensatory damages in the amount of $225,000, and punitive damages "sufficient to deter such future actions against others." (Doc. 5, p. 4).

## DISCUSSION

Because plaintiff is proceeding *in forma pauperis*, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim

on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The court must read plaintiff's *pro se* allegations in a liberal fashion. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Dismissals for failure to state a claim are governed by the same standard as FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6). *See Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). In determining whether the complaint states a claim upon which relief may be granted, the court accepts all factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and dismissing plaintiffs' case for failure to state a claim, because plaintiffs had "not nudged their claims across the line from conceivable to plausible"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

Under FEDERAL RULE OF CIVIL PROCEDURE 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court reiterated in *Iqbal*, 129 S. Ct. at 1949, although RULE 8 does not require detailed factual allegations, the rule does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." The mere possibility that the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim. *See id.* Rather, the complaint must include "[f]actual allegations . . .

[sufficient] to raise a right to relief above the speculative level," that is, "across the line from conceivable to plausible . . . ." *See Twombly*, 550 U.S. at 555, 570.

A complaint is also subject to dismissal for failure to state a claim when the allegations—on their face—show that an affirmative defense bars recovery on the claim. *See Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) (reiterating that principle and providing, as an example, that if a complaint's allegations show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim).

*Sovereign Immunity and the Eleventh Amendment*

Pursuant to the doctrine of sovereign immunity, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *See* U.S. CONST. amend XI. Absent waiver or express congressional abrogation, neither of which is present in this case, the Eleventh Amendment prohibits a suit against a state in federal court. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Gamble v. Fla. Dep't of Heath and Rehabilitative Servs.*, 779 F.2d 1509, 1511 (11th Cir. 1986).[1] Accordingly, the doctrine of sovereign immunity operates to bar plaintiff's claims for money damages against the state of Florida. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("[I]n the absence of consent a suit in which the State or one of

---

[1] This immunity extends beyond the words of the Eleventh Amendment itself, and includes suits in which a state is being sued by its own citizen. *See Hans v. Louisiana*, 134 U.S. 1, 10 S. Ct. 504, 33 L. Ed. 842 (1890).

its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). The cause of action against defendant state of Florida is therefore properly dismissed as one seeking "monetary relief against a defendant who is immune from such relief." *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

*Judicial and Prosecutorial Immunity*

A judge acting in her judicial capacity is entitled to absolute immunity from liability for damages under § 1983, unless she acts in the "clear absence of all jurisdiction." *See Stump v. Sparkman*, 435 U.S. 349, 355-57 (1978); *see also Scott v. Hayes*, 719 F.2d 1562, 1567 (11th Cir. 1983) (holding that judge performing judicial acts in a matter over which he had jurisdiction is entitled to immunity for his actions under § 1983). The *Stump* test is a two-part inquiry. The first question is whether the judge dealt with the plaintiff in a judicial capacity. "Whether a judge's actions were made while acting in his judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005) (*citing Scott*, 719 U.S. at 1565). The second inquiry of the *Stump* test is whether the judge acted in the "clear absence of all jurisdiction." *See Stump*, 435 U.S. at 362. A judge acts in the absence of jurisdiction when there is no subject-matter jurisdiction to hear a case, or when the acts of the judge are purely private and non-judicial. *See Simmons v. Conger*, 86 F.3d 1080, 1084-85 (11th Cir. 1996). Here, the allegations of the complaint make clear that Judge Williams, in sentencing plaintiff to a term of probation and cancelling a hearing on his habeas petition, addressed plaintiff in her judicial capacity. Judge Williams was the judge of a criminal court presiding over

plaintiff's criminal case both at the time of the sentencing and the alleged violation of probation. Accordingly, Judge Williams clearly had jurisdiction over plaintiff's criminal case, and plaintiff offers no allegation to the contrary. *See Stump*, 435 U.S. at 356-57 & n.7. For these reasons, plaintiff's damages claims against Judge Williams must be dismissed.

Assistant State Attorney Cox is also entitled to absolute immunity, as her allegedly unconstitutional actions were performed within the scope of her role as a government advocate. *See Rivera v. Leal*, 359 F.3d 1350, 1353 (11th Cir. 2004) ("A prosecutor is entitled to absolute immunity for all actions he takes while performing his function as an advocate for the government." (*citing Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993))). The initiation and pursuit of a criminal prosecution, appearances before the court, and other in-court activity are classic examples of actions taken by a prosecutor in performing her role as a government advocate. *See id.*; *see also Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999) (finding that absolute immunity extends to prosecutor's acts performed "in preparing for the initiation of judicial proceedings for trial, and which occur in the course of his role as an advocate for the State"). For qualifying acts, a prosecutor receives absolute immunity irrespective of her motive or intent. *See Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989) ("Absolute prosecutorial immunity is not defeated by a showing that the prosecutor acted wrongfully or even maliciously . . . .") (quotations omitted). Here, Cox initiated plaintiff's prosecution for reckless driving and driving without a valid driver's license, and declined to intervene to prevent plaintiff's pretrial incarceration upon the alleged violation of probation. Because these actions occurred in the course of her role as an advocate for the state of Florida, Assistant State Attorney Cox is entitled to prosecutorial immunity. Plaintiff's damages claims

against Cox must therefore be dismissed.

*Vicarious Liability and § 1983*

Plaintiff names Sheriff Morgan as a defendant in this action, yet asserts no allegations against Morgan, except that it was Morgan who held him in custody after Dublin submitted the affidavit of VOP. (Doc. 5, p. 3). Significantly, the amended complaint does not assert that Morgan participated *personally* in plaintiff's detention during the forty-five day period at issue—plaintiff mentions Morgan but once in the body of the complaint, asserting in that context that he was "in the custody of Escambia County Sheriff David Morgan . . . ." (Doc. 5, p. 3). Accordingly, the court reasonably infers from this language a claim of supervisory liability, based on plaintiff's apparent detention during this period at the Escambia County Sheriff's *Department*, of which Morgan is simply the executive. "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); *Polk Cnty. v. Dodson*, 454 U.S. 312 (1981); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). "[T]he mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 n.58 (1978) (*citing Rizzo v. Goode*, 423 U.S. 362, 370-371 (1976)). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). In *Douglas v. Yates*, 535 F.3d 1316 (11th Cir. 2008), the Eleventh Circuit set forth the limited

circumstances in which a causal connection can be shown sufficient to render a supervisor liable on a § 1983 claim:

> A causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so; when the supervisor's improper custom or policy leads to deliberate indifference to constitutional rights; or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* at 1322 (*citing West v. Tillman*, 496 F.3d 1321, 1328-29 (11th Cir. 2007)). Plaintiff alleges no such circumstances here. Consequently, the amended complaint fails to state a viable basis for recovery against Sheriff Morgan.

In a similar vein, plaintiff cannot make out an actionable claim against defendant Escambia County. Unlike states and their constituent agencies and departments, counties do not enjoy the protections of sovereign immunity as afforded by the Eleventh Amendment. *See Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 43 (1994) ("[T]he Court has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a slice of state power.") (internal quotation marks omitted); *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, (11th Cir. 2005) ("[I]t is by now well established that '[t]he bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances, but does not extend to counties and similar municipal corporations." (*quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) (citation omitted))); *Hutton v. Strickland*, 919 F.2d 1531, 1542 (11th Cir. 1990) ("This court specifically has recognized that the Eleventh Amendment

does not prevent an award of damages against a county."). Though a municipality may be held liable under § 1983 in a way a state may not, "a plaintiff . . . may not hold a county liable under the theory of *respondeat superior*, and the fact that the plaintiff suffered a deprivation of federal rights at the hands of a municipal employee is insufficient to [establish] a municipality's liability." *See Sevostiyanova v. Cobb Cnty. of Ga.*, No. 11–13918, 2012 WL 2814394, at *4 (11th Cir. July 11, 2012) (*citing McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)); *see also Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) ("A county's liability under § 1983 may not be based on the doctrine of respondeat superior."). "Rather, the plaintiff must prove that:  (1) her constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy or custom at issue caused the constitutional violation." *Sevostiyanova*, 2012 WL 2814394, at *4 (*citing McDowell*, 392 F.3d at 1289). "In order to demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice, and random acts or isolated incidents are insufficient." *Id.* (*citing McDowell*, 392 F.3d at 1290). Here, plaintiff does not allege that Escambia County policy or custom constituted deliberate indifference to a constitutional right, or that such policy or custom caused the claimed constitutional violations. In fact, plaintiff does not even mention Escambia County, as a separate and distinct entity, in the body of the complaint. Consequently, the damages claims lodged against the county should be dismissed.

*False Imprisonment and the Doctrine of Qualified Immunity*

Whereas prosecuting officials are insulated from damages by absolute immunity for functions "intimately associated with the judicial process," *see Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005) (*quoting Jones v. Cannon*, 174 F.3d

1271, 1281 (11th Cir. 1999) (internal quotations omitted)), probation officers do not enjoy similar protections against civil liability under § 1983 for initiating probation revocation proceedings, *see Callaway v. Bell*, No. 605CV1569ORL18DAB, 2006 WL 1232826, at *3-4 (M.D. Fla. May 8, 2006). Nonetheless, a probation officer does enjoy qualified immunity from damages for discretionary acts, *see Hyland v. Sec'y for Dep't of Corr.*, No. 06-14455, 2007 WL 2445972, at *3 (11th Cir. Aug. 29, 2007) (holding plaintiff was "absolutely barred by qualified immunity from asserting his § 1983 false arrest claim" against defendant probation officer), provided "these acts do not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known," *see Jones*, 174 F.3d at 1282. A probation officer engages in a discretionary function when she causes a probationer to be arrested based on alleged probation violations. *See Hyland*, 2007 WL 2445972, at *3 (determining that probation officer "was engaged in a discretionary function when he caused [plaintiff] to be arrested based on alleged probation violations"). Where a civil rights plaintiff is detained pursuant to an arrest based on a probation officer's affidavit, and the affidavit is supported by probable cause of a probation violation, the plaintiff "is absolutely barred by qualified immunity from asserting his § 1983 false arrest claim against" the probation officer.[2] *See id.*; *see also German v. Sosa*, 399 F. App'x 554, 556 (11th Cir. 2010) (holding that probable cause operates to bar § 1983 action for false imprisonment); *Atterbury v. City Of Miami Police Dep't*, 322 F. App'x 724, 727 (11th Cir. 2009) ("[I]f a police officer has probable cause to make

---

[2] Under the tort laws of the state of Florida, false arrest and false imprisonment are one and the same. *See Weissman v. K Mart Corp.*, 396 So. 2d 1164, 1165 n.1 (Fla. 3d DCA 1981) ("False arrest and false imprisonment are different labels for the same cause of action."). The federal courts have used the terms interchangeably as well. *See German v. Sosa*, 399 F. App'x 554, 556 (11th Cir. 2010).

an arrest, the arrestee may not sue for false imprisonment under § 1983 based on a detention pursuant to that arrest."); *Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009) ("[A] claim of false imprisonment, absent misidentification, depends on an absence of probable cause . . . ."); *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996) (holding that arrest made with probable cause acts as absolute bar to § 1983 false imprisonment claim).

Here, plaintiff asserts that his imprisonment was false because Judge Williams had ordered that he would not be incarcerated upon a revocation of probation, but plaintiff's allegations do not suggest that he was incarcerated upon the revocation of his probation. Rather, plaintiff alleges merely that he was subjected to pretrial detention, pending a probation violation hearing—such pretrial detention can be reconciled with the purported directive of Judge Williams, who ordered only that plaintiff would not be incarcerated upon a *revocation* of probation. Regarding the conduct of the defendant probation officer, Charity Dublin, who prepared and submitted an affidavit of VOP, plaintiff's allegations do not plausibly suggest that he was arrested and detained unlawfully, that is, in the absence of probable cause to support Dublin's probation violation affidavit (and any warrant issued on the basis of the affidavit). To plead a valid claim for false imprisonment under § 1983, plaintiff must assert the common law elements of the tort, the defining feature of which is an *unlawful* arrest or detention. *See Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996). Conspicuously absent from the amended complaint is any assertion that plaintiff did not, in fact, violate the terms of his probation, or that the affidavit of probation contained material false statements, such that plaintiff's arrest and subsequent pretrial detention might be unlawful. Having failed to allege facts plausibly calculated to challenge the lawfulness of his pretrial detention, plaintiff fails

to state a § 1983 claim for false imprisonment against Dublin, who is entitled to qualified immunity as per the well-pleaded facts of the amended complaint. *See Hyland v. Sec'y for Dep't of Corr.*, No. 06-14455, 2007 WL 2445972, at *3 (11th Cir. Aug. 29, 2007). The damages claims against Dublin, therefore, must be dismissed.

Accordingly, it is respectfully RECOMMENDED:

1. That plaintiff's claims be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii), for plaintiff's failure to state a claim upon which relief may be granted, and for plaintiff's pursuit of monetary relief against defendants who are immune from such relief.

2. That all pending motions be DENIED as moot.

3. That the clerk be directed to close the file.

At Pensacola, Florida this 27th day of August, 2012.

/s/ *Charles J. Kahn, Jr.*
CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).